STATE of Utah, in the Interest of Ruben GONZALES, a minor, Appellant.

No. 14085.

Supreme Court of Utah.

Dec. 24, 1975.

1. *Smith v. Sanders,* 112 Utah 517, 189 P.2d 701.

2. *Dansie v. Lambert,* 542 P.2d 742 (Utah).

Brian A. Florence and John Blair Hutchison, of Florence & Hutchison, Ogden, for appellant.

Vernon B. Romney, Atty. Gen., Salt Lake City, for respondent.

TUCKETT, Justice:

These proceedings were initiated by the State of Utah in the interest of Ruben Gonzales, a minor child under the age of eighteen years. ·Gonzales, herein referred to as defendant, was charged with the offense of manslaughter in that he killed one William Warlie. This charge was sufficiently laid under the provisions of Section 76–5–205 which defines the crime of manslaughter.

On February 22, 1975, defendant had · driven his father and Ruby Martinez to a liquor store in Ogden, Utah. Sunday Martinez and Mary Lou Ybarra, both aged approximately sixteen, accompanied the defendant in the automobile. When the father, Jesse Gonzales, returned to the vehicle, he was accosted by two Indians who were under the influence of liquor. The Indians asked Jesse Gonzales for money, which he refused to give them. Jesse fell against the automobile, and there is a dispute in the evidence as to whether he was struck by Warlie or whether he fell by reason of his intoxication. The Indians started to leave the scene of the automobile when the defendant got out of the automobile and called them back. At that time Warlie struck the defendant with a nunchuck, and the other Indian punched him, causing the defendant to fall to the ground. The defendant got to his feet and pulled a gun and shot Warlie. Warlie walked to the side of the vehicle and laid his hands on its top. The defendant and Warlie spoke to each other again, and then the defendant shot Warlie again. Warlie fell to the ground and thereafter died. The second Indian, Boyd L. Wyatt, ran across the street with the defendant in pursuit. Defendant fired two or three shots at Wyatt, one of which grazed his head and one became lodged in his belt buckle. Evidence tended to show that defendant's father had entered the car prior to the time the shots were fired at Warlie.

It is the defendant's contention that he was acting in defense of himself and his

father and that he was not guilty of the crime of manslaughter. The force which one may use in defense of himself or another is prescribed by the provisions of Section 76–2–402(1), U.C.A.1953, as amended, which is as follows:

A person is justified in threatening or using force against another when and to the extent that he reasonably believes that such force is necessary to defend himself or a third person against such other's imminent use of unlawful force; however, a person is justified in using force which is intended or likely to cause death or serious bodily injury only if he reasonably believes that the force is necessary to prevent death or serious bodily injury to himself or a third person, or to prevent the commission of a forcible felony.

■ The recent decision of this court, *State v. Jackson,*[1] lays down the rule that a defendant is entitled to an acquittal if, based upon the whole evidence, there is a reasonable doubt as to whether or not he acted in self-defense. The evidence in this case does not compel a finding that the defendant, when he fired the shots, one of which mortally wounded Warlie, was acting in defense of himself or his father. The record does not reveal whether the first or the second shot was fatal. Nevertheless, the record does disclose that at the time both shots were fired, the father had gotten into the vehicle and was no longer in danger. The record further shows that Warlie was leaving the scene of his confrontation with Jesse Gonzales when the defendant left the car and called Warlie and his companion back. It is quite clear that after the first shot was fired, Warlie attempted to reach a place of safety when the second shot was fired. The record supports the court's conclusion that the defendant acted from anger rather than in defense of himself or his father.

■ In addition to the charge of manslaughter hereinabove discussed, the defendant was also charged with a second offense which was charged in the following language: "That on or about the 22nd day of February, 1975, Ruben Gonzales did attempt to unlawfully cause the death of another, to-wit: Lloyd L. Wyatt." We are of the opinion that the second charge is not well pleaded in that it does not inform the defendant in ordinary, concise language of the precise nature of the charge against him. It appears that the prosecutor intended to charge the defendant with an attempt to commit a homicide in general terms and without specifying degree or nature thereof. Homicide is defined by Section 76–5–201(1), U.C.A.1953, as amended, as follows:

A person commits criminal homicide if he intentionally, knowingly, recklessly, or with criminal negligence, unlawfully causes the death of another.

The elements of crime of attempt are set forth in Section 76–4–101(1) which reads as follows:

For purposes of this part a person is guilty of an attempt to commit a crime if, acting with the kind of culpability otherwise required for the commission of the offense, he engages in conduct constituting a substantial step toward commission of the offense.

It is quite apparent that the language of the second charge is so vague and uncertain that it fails to state a public offense and the decision of the court below finding the defendant guilty of the second charge is reversed.

We are of the opinion that the court's finding and determination that the defendant was guilty of manslaughter is supported by the record, and the same is affirmed.

HENRIOD, C. J., and MAUGHAN, J., concur.

1. 528 P.2d 145.

CROCKETT, Justice (concurring, dissenting in part):

I concur in affirming the conviction on the first count. But as to the second, I make this observation: Our statute Sec. 77–21–8, U.C.A.1953, provides:

(1) The information or indictment may charge, and is valid and sufficient if it charges the offense . . . in one or more of the following ways:

(a) By using the name given to the offense by the common law or by a statute.

(b) By stating so much of the definition of the offense, either in terms of the common law or of the statute defining the offense or in terms of substantially the same meaning, as is sufficient to give the court and the defendant notice of what offense is intended to be charged.

Sec. 77–21–47 sets forth simplified forms for charging various offenses including:

Manslaughter—A.B. unlawfully killed—C.D.; [and other similar brief charges, e. g.:]

Murder—A.B. murdered C.D.

This simplified form of pleading is sufficient to inform a defendant of the charge and to satisfy the requirement of the Utah Constitution, Art. I, Sec. 12, ". . . the accused shall have the right . . . to demand the nature and cause of the accusation against him, [and] to have a copy thereof . . ." see *State v. Avery,* 102 Utah 33, 125 P.2d 803; *State v. Landrum,* 3 Utah 2d 372, 284 P.2d 693.

I therefore think that the charge in the second count is sufficient; and that any further information thought necessary or desirable for the defense could have been obtained by appropriate motion or request for bill of particulars.

ELLETT, J., concurs in the opinion of CROCKETT, J.